IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, and JAMES S. JORGENSEN, Administrator of the Funds, <br><br> Plaintiffs, <br> v. <br><br> G.K. HARRIS, LTD., an Illinois corporation, and Gerald K. Harris, individually, <br><br> Defendants. | FILED: MAY 06, 2008 <br> 08CV2594   LCW <br> JUDGE KOCORAS <br> MAGISTRATE JUDGE KEYS <br><br> Case No. <br><br> Judge |

## COMPLAINT

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively "Plaintiffs" or the "Funds") and James S. Jorgensen (hereinafter "Jorgensen"), Administrator of the Funds, by their attorneys Patrick T. Wallace, Jerrod Olszewski, Christina Krivanek, Amy N. Carollo and Charles Ingrassia for their Complaint against Defendants G.K. Harris, Ltd., an Illinois corporation, and Gerald K. Harris, individually, represent as follows:

## COUNT I

### (Failure To Obtain a Bond):

For a cause of action against Defendant G.K. Harris, Ltd:

1.  Jurisdiction is based on Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, 28 U.S.C. § 1367, and federal common law.

2.  Venue is proper pursuant to 28 U.S.C. §1391 (a) and (b), and 29 U.S.C. § 185(a).

3.  The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4.  Plaintiff Jorgensen is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Jorgensen is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

2

5. Defendant G.K. Harris, Ltd., (hereinafter the "Company") is an Illinois corporation. At all times relevant herein, the Company did business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6. Defendant Gerald K. Harris (hereinafter "Harris") is, and was at all times relevant herein, the President of the Company,

7. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and the Company are parties to a collective bargaining agreement which became effective June 1, 2006 ("Agreement"). (A copy of the "short form" Agreement entered into between the Union and the Company which Agreement adopts and incorporates Master Agreements between the Union and various employer associations, and also binds the Company to the Funds' respective Agreements and Declarations of Trust, is attached hereto as Exhibit A.)

8. The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Concrete Contractors Association of Greater Chicago ("CCA"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Builders' Association ("BAC"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the CARCO Industry Advancement Fund ("CARCO"), the Chicago Area Independent Contractors Association

("CAICA"), and the Illinois Small Pavers' Association ("ISPA") to act as an agent in the collection of contributions due to those Funds.

9. The Agreement and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, and/or benefits for the training fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed up to 20 percent liquidated damages plus interest.

10. The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

11. The Agreement requires the Company to obtain and maintain a surety bond to guaranty the payment of future wages, pension and welfare benefits.

12. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company has:

(a) failed to obtain and maintain a surety bond in an amount of at least $5,000.00, as required by the relevant Agreement.

13. The Company's failure to obtain and maintain a bond violates and Section 301 of the LMRA, 29 U.S.C. §185, and the terms of the Agreement and the Funds' respective Trust Agreements.

14. Pursuant to the terms of the Agreement and the Funds' respective Trust Agreements, the Company is liable to the Funds for reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment against Defendant G.K. Harris, Ltd:

a. ordering the Company to obtain and maintain a bond; and

e. awarding the Funds their attorney fees and costs incurred in bringing this action, along with any further legal and equitable relief as this Court deems appropriate.

## COUNT II

### (Piercing the Corporate Veil)

For a cause of action against Defendant Gerald K. Harris:

15. Plaintiffs reallege paragraphs 1 through 14 of Count I.

16. This Court has supplemental jurisdiction over Count II pursuant to 28 U.S.C. § 1367.

17. Venue is proper pursuant to 28 U.S.C. § 1391(b).

18. On August 20, 2007, the Plaintiffs obtained a judgment (hereinafter referred to as the "Judgment") against the Company in the amount of $46,434.92. The Judgment was obtained in the United States District Court for the Northern District of Illinois, Eastern Division (case number 06 C 2584). A true and accurate copy of the Judgment in favor of the Funds and against the Company is attached hereto as Exhibit B.

19. Harris commingled the Company's funds with his personal assets.

20. Harris used the assets of the Company to improve his personal property.

21. The Company is undercapitalized in that it is unable to pay the contributions, dues and wages owed to the Funds, District Council and employees pursuant to the Judgment.

22. Harris disregarded the corporate form of the Company to such an extent that the distinct identities of the Company and Harris no longer exist. Further, Harris has been personally enriched from disregarding the corporate identity of the Company to the extent that adhering to the corporate existence of the Company would sanction a fraud and/or promote injustice. Accordingly, the corporate veil of the Company should be pierced and liability should attach to Harris for all amounts owed to the Funds pursuant to the Judgment.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant Gerald K. Harris for the amounts of unpaid contributions, dues and wages due including all interest, liquidated damages, audit costs, and attorneys' fees and costs owed by G.K. Harris, Ltd., in the Judgment obtained by the Funds on August 20, 2007, in addition too the costs of any additional damages sustained by the Funds and any other legal and equitable relief as the Court deems appropriate.

May 6, 2008

Respectfully submitted,

Laborers' Pension Fund, et al.

By: _____
Charles Ingrassia

Patrick T. Wallace
Jerrod Olszewski
Christina Krivanek
Amy Carollo
Charles Ingrassia
Laborers' Pension and Welfare Funds
111 W. Jackson Blvd., Suite 1415
Chicago, IL 60604
(312) 692-1540

6

# CONSTRUCTION & GENERAL LABORERS'
## DISTRICT COUNCIL OF CHICAGO AND VICINITY
### AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO
101 BURR RIDGE PARKWAY • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8285 • FAX: 630/655-8053

### INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between **G. K. HARRIS, LTD** ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America, AFL-CIO ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 76, 78, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092, together with any other Local Unions that may come within the Union's jurisdiction ("Local Union"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** The Employer, in response to the Union's request for recognition as the majority 9(a) representative of its Laborer employees, and the Union's offer to show evidence of its majority support, hereby recognizes the Union under Section 9(a) of the Act as the sole and exclusive collective bargaining representative for the employees now and hereinafter employed in the Laborer bargaining unit with respect to wages, hours and other terms and conditions of employment without the need for a Board certified election. The Employer has not assigned its rights for purposes of collective bargaining with the Union to any person, entity or association, and hereby revokes its prior assignment of such bargaining rights, if any. The Employer further voluntarily elects not to assign such rights to any person, entity or association during the term of this Agreement or any extension thereof, without written approval from the Union. The Employer shall abide by this Agreement, and extensions hereof, provided that it employs at least one Laborer per year.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreements, as designated by the Union, between the Union and the Builders Association of Chicago and Vicinity, the Illinois Road Builders Association, the Underground Contractors Association, the Mason Contractors Association of Greater Chicago, the Concrete Contractors Association of Greater Chicago, G.D.C.N.I./C.A.W.C.C., the Chicago Demolition Contractors' Association, the Illinois Environmental Contractors Association, and Lake County Contractors Association, the Contractors Association of Will and Grundy Counties, the Fox Valley General Contractors Association, the Chicago Area Rail Contractors Association, the Chicago Scaffolding Association, and all other employer associations with whom the Union or its affiliated Local Unions has an agreement. If the applicable collective bargaining agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a new agreement has been established, which shall be incorporated retroactively herein. It is further agreed that where the Employer works within the geographic jurisdiction of the Union's affiliated Local Unions that have negotiated an association agreement effective within the Local Union's jurisdiction, then the Local Union agreement is herein specifically incorporated into this Agreement and shall supersede the area-wide standard association agreements within the locality for which it is negotiated in the event of any conflict between them. Notwithstanding the foregoing, this Agreement supersedes all contrary terms in either the Local Union or area-wide association agreements.

3. **Dues Checkoff.** The Employer shall deduct from the wages of employees uniform working dues in the amount of 1.5% of gross wages, or such other amount as directed by the Union, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. It is the parties' intention that these deductions comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended, and such deductions be made only pursuant to written assignments from each employee on whose account such deductions are made, which shall not be irrevocable for a period of more than one year or beyond the termination date of the labor agreement, whichever occurs sooner.

4. **Work Jurisdiction.** This Agreement covers all work within the Union's work jurisdiction as set forth in the Union's Statement of Jurisdiction, receipt of which is hereby acknowledged, and as amended by the Union from time to time. The Statement of Jurisdiction is incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of the assignment. Neither the Employer nor the work assignment(s) is required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputed board or mechanism except upon written notice by and direction of the Union. The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any work to be done at the site of construction, alteration, painting or repair of a building, structure or other work and coming within the above-described jurisdiction of the Union to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. When the Employer contracts out or sublets any of the work coming within the above-described jurisdiction of the Union, it shall assume the obligations of any such subcontractor for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

5. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust ("LECET"), and to all other designated fringe-affiliated benefit and labor-management funds, and to become bound by and be considered a party to the Agreements and Declarations of Trust creating said Trust Funds as if it had signed the original copies of the Trust Instruments and amendments thereto. The Employer ratifies and confirms the appointment of the Employer Trustees who shall, together with their successor Trustees, carry out the terms and conditions of the Trust instruments. The Employer further affirms that all prior contributions paid to the Welfare, Pension and Training Funds were made by duly authorized agents of the Employer at all proper rates, and evidence the Employer's intent to be bound by the Trust Agreements and Collective Bargaining Agreements in effect when the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable agreements. Upon written notice to the Employer, the Union may increase the minimum surety bond to an amount not exceeding one hundred thousand dollars where necessary to ensure Employer compliance with its obligations.

Where Laborers covered by this Agreement perform work outside the Chicago area, the Employer shall, if covered under a local LIUNA-affiliated labor agreement in the area, contribute to the local fringe benefit funds in the amounts set forth in the local agreement. Otherwise, it shall remit all fringe benefit fund contributions in the amounts and to the funds as required under this Agreement.

6. **Wages and Industry Funds.** The Employer shall pay all the negotiated hourly wages, fringe benefit and industry-fund contributions it is bound to pay under the applicable Collective Bargaining Agreements, including, where applicable, contributions to the Chicago-Area LECET and designated labor-management and industry advancement funds, except that no contributions shall be made to MCIAF unless consented to and upon written direction from the Union. All additional wage rates, dues checkoff, and fringe benefits that are negotiated or become effective after May 31, 2001 shall be incorporated into this Agreement. The Union expressly reserves its sole right to allocate and apportion each annual total economic increase.

7. **Contract Enforcement.** All grievances arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment or underpayment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, subcontracting in violation hereof, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other lawful and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

8. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner of managers, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph. The Union may strike to enforce the terms hereof.

9. **Termination.** This Agreement shall remain in full force and effect from June 1, 2001 (unless dated differently below) through May 31, 2006, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such notice the Employer and the Union agree to be bound by the new area-wide negotiated agreements with the various Associations incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given as provided above.

10. **Execution.** The Employer acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The Employer further acknowledges receipt of a copy of the complete Joint Agreements.

Dated: **12-13** 20**05**

ACCEPTED:
Laborers' Local Union No. **ONE**

By: _[signature]_

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _[signature]_
Frank Riley, President & Secretary-Treasurer

By: _[signature]_
James P. Connolly, Business Manager

For Office Use Only: _CH#_

**G. K. HARRIS, LTD**
(Employer)

FEIN No.: **36 326 5739**

By: **GERALD K HARRIS PRESIDENT**
(Print Name and Title)

_Gerald K Harris_
(Signature)

**600 West Van Buren #908**
(Address)

**Chicago, Illinois 60607**
(City, State and Zip Code)

**(312) 631-4650** Fax **(312) 831-1588**
(Telephone/Telefax)

WHITE - LOCAL UNION • CANARY - TRUST FUND • PINK - DISTRICT COUNCIL • GOLD - EMPLOYER

**EXHIBIT A**

Order Form (01/2005)    Case 1:06-cv-02584    Document 45    Filed 08/20/2007    Page 1 of 1

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 2584 | **DATE** | 8/20/2007 |
| **CASE TITLE** | Laborers' Pension Fund vs. G.K. Harris, Ltd. | | |

**DOCKET ENTRY TEXT**

Enter Order. Judgment is entered for the Plaintiffs and against Defendant G.K. Harris, Ltd. in the amount of $46,434.92 which includes contributions, dues, late fees, and interest that was not paid for hours worked from June 1, 2006 through December 31, 2006, pursuant to the audit. Plaintiffs are entitled to all additional attorney fees and costs incurred in having to collect this Judgment.

■ [ For further detail see separate order(s).]

Docketing to mail notices.

| | Courtroom Deputy Initials: | TH |
|---|---|---|

06C2584 Laborers' Pension Fund vs. G.K. Harris, Ltd.



EXHIBIT B